Jeffrey A. MARCILIONIS,
*Appellant,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
an Oregon corporation,
*Respondent.*

(9201-00516; CA A75156)

854 P2d 474

Timothy J. Vanagas, Gresham, argued the cause for appellant. With him on the brief were E. Shane Reeder and Jennings & Vanagas, Gresham.

ゴ hn M. Eickelberg, Tigard, argued the cause for respondent With him on the brief was Cavanagh & Zipse, Tigard.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

### DEITS, P. J.

Plaintiff brought this declaratory judgment action, contending that he is entitled to uninsured motorist coverage under an automobile policy issued by defendant to plaintiff's uncle. The trial court granted defendant's motion for summary judgment and denied plaintiff's motion. Plaintiff appeals, assigning error to both rulings. We reverse.

While plaintiff was driving his uncle's car, he noticed a woman standing on a curb. The woman appeared to be waving at him and in need of help. He drove to the curb, stopped the car and attempted to offer assistance. The woman unexpectedly entered the car, removed the keys from the ignition and began running down the street with the keys. Plaintiff got out of the car and gave chase. He caught up with her approximately seven feet away from the car. The woman then threw the keys, but plaintiff did not see where they landed. He found the keys after a two or three minute search in the travelled part of the street. Immediately after he found the keys, plaintiff saw that a vehicle was approaching him at a high rate of speed. He attempted to avoid being hit, but the vehicle struck him. Its driver was uninsured. Plaintiff filed a personal injury claim with defendant, which it denied, and plaintiff then brought this action.

The only issue on appeal is whether plaintiff was "occupying" his uncle's vehicle at the time of his injury, and was therefore an "insured person." The policy defines occupying to mean "in, on, getting into or out of" the vehicle. That definition is similar to the definition in ORS 742.504(2)(i) ("in or upon or entering into or alighting from"), and defendant agrees that the policy definition "is at least as favorable to the plaintiff as the statutory definition." Both parties rely on *Mackie v. Unigard Insurance Co.*, 90 Or App 500, 752 P2d 1266 (1988), and *State Farm Ins. Co. v. Berg*, 70 Or App 410, 689 P2d 959 (1984), *rev den* 298 Or 553 (1985).

In *Berg*, the defendant's claim was for PIP benefits, but the principles stated there are nevertheless apposite. Berg was ejected from her car as the result of a collision with another vehicle and, while lying in the roadway, was struck by a third vehicle. The issue was whether Berg was a "pedestrian," in which case she would be entitled to PIP benefits

under the third driver's policy, or was instead "occupying" her own vehicle, in which case she would not be entitled to those benefits. We discussed cases from other jurisdictions and concluded:

> "The import of these cases appears to be that a person remains an 'occupant' of a vehicle until the person has completed all acts reasonably expected to be performed under the circumstances or reasonably incidental to the disembarking process and commences a new course of conduct. State Farm urges us to apply that criterion to the facts of this case and to conclude that Berg was 'occupying' her own vehicle at the time its policyholder, Miller, struck Berg. State Farm argues that, because Berg was struck by Miller's vehicle shortly after being thrown from her own vehicle, remained immobile close to her vehicle, and neither had reached nor sought a place of safety and had not embarked on a different course of conduct, she was still in the process of 'alighting from' her own vehicle and, therefore, was not a 'pedestrian' within the terms of the policy.

> "Our analysis of the situation, however, dictates a contrary conclusion. Following her involuntary ejection from her vehicle, Berg, landed in a traffic lane where, except for attempting to lift her head and right arm, she remained stationary. From the time she landed on the highway until the time she was struck by Miller's vehicle, she was apparently not ambulatory. In our opinion, those facts permit no other conclusion but that Berg at that point had completed all acts that a person in her circumstances reasonably would be expected to have done. She had gone as far as she was going to go in leaving her vehicle; she had 'alighted.' That she then did not seek a place of safety or embark on a different course of conduct is not dispositive; she was unable to do so. We find that Berg completed the 'alighting' process upon coming to rest on the pavement." 70 Or App at 415-16.

We added, however:

> "As a necessary concomitant of our decision, any injuries that Berg incurred upon ejection as a result of her body coming into contact with the surface of the roadway, as opposed to those resulting from contact with the Miller vehicle, occurred while she was 'occupying' her own vehicle." 70 Or App at 416 n 2.

In *Mackie*, the plaintiff was struck by an uninsured motorist while removing a package from the trunk of her car

immediately after arriving at her destination. The issue was whether the plaintiff came within the defendant insurer's *exclusion* for "bodily injury to an insured while occupying" the vehicle in question. We restated our reasoning in *Berg* and concluded:

> "Under the facts of this case, Mackie had left the inside of the car but, rather than embarking on a new course of conduct, she opened the trunk for the purpose of retrieving a birthday gift. Because opening a trunk for the purpose of removing objects is a course of conduct reasonably incidental to leaving and alighting from a car, we conclude that she was occupying her car when she was struck by the uninsured motorist." 90 Or App at 505.

Plaintiff argues that, when he was injured, he was "occupying" the vehicle under the tests articulated and applied in *Berg* and *Mackie.* He explains that his only reason for leaving the car was to retrieve the keys, that it was essential for him to have the keys to continue driving and that his purpose was to continue his trip. Therefore, he had never "alighted," "come to rest," begun a new course of conduct or "gone as far as he could go" in leaving his vehicle. His express purpose was to return to the vehicle and continue on his course. Defendant takes the contrary position, contending that plaintiff "had completed all acts reasonably incidental to the disembarking process and had commenced a new course of conduct before being struck."

We agree with plaintiff. Unlike the defendant in *Berg*, plaintiff's course of conduct, *i.e.*, his trip, was not terminated by the event that caused him to leave the car; rather, he left the car for the very purpose of facilitating the continuation of that course. Furthermore, his physical departure from the car and recovery of the keys were essential to his ability to resume his course of occupying and using the car. Summarily stated, he left the car for the purpose of making his continued occupancy of it possible. *Berg* and *Mackie* give a broad meaning to "occupying" and similar terms, which goes beyond physical presence and its immediate precursor and aftermath. In our opinion, plaintiff fits well within that meaning.

Reversed and remanded with instructions to enter judgment for plaintiff.